**UNKNOWN PARTIES,
et al., Plaintiffs,**

v.

**Jeh JOHNSON, et al., Defendants.**

**No. CV 15–00250–TUC–DCB**

United States District Court,
D. Arizona.

Signed January 11, 2016

Colette Reiner Mayer, Morrison & Foerster LLP, Palo Alto, CA, Daniel Joseph Pochoda, Victoria Lopez, James Duff Lyall, ACLU, Phoenix, AZ, Elizabeth Gilmore Balassone, Harold J. McElhinny, Kevin Martin Coles, Morrison & Foerster LLP, Travis Silva, Lawyers Committee For Civil Rights, San Francisco, CA, Emily Creighton, Mary Kenney, Melissa Ellen Crow, American Immigration Council, Washington, DC, Karen Cassandra Tumlin, Linton Joaquin, National Immigration Law Ctr, Nora A. Preciado, Los Angeles, CA, Louise Carita Stoupe, Pieter S. Deganon, Morrison & Foerster LLP, Tokyo, Japan, for Plaintiffs.

Sarah B. Fabian, Dillon Fishman, Woei–Tyng Daniel Shieh, Us Dept Of Justice, Washington, DC, for Defendants.

## ORDER

David C. Bury, United States District Judge

Plaintiffs are three civil immigration detainees who are or were confined in a U.S. Customs and Border Protection (CBP) detention facility within the Tucson Sector of the U.S. Border Patrol. Defendants are Jeh Johnson, Secretary of the U.S. Department of Homeland Security (DHS); R. Gill Kerlikowske, CBP Commissioner; Michael J. Fisher, CBP Chief; Jeffrey Self, Commander of the Arizona Joint Field Command of CBP; and Manuel Padilla, Jr., Chief Patrol Agent for the U.S. Border Patrol's Tucson Sector. All Defendants are named in their official capacities. Pending before the Court is Plaintiffs' Motion for Class Certification (Doc. 4).[1] The Motion is fully briefed. (Docs. 41, 42.) For the reasons stated below, the Court will grant the Motion and will certify the proposed class.

## I. Background

CBP has eight border patrol stations located in its Tucson Sector, which includes Cochise, Pima, Pinal, and Santa Cruz Counties in Arizona. These eight stations are located in Why, Casa Grande, Tucson, Nogales, Wilcox, Sonoita, Bisbee, and Douglas, Arizona.[2] In 2013 and 2014, CBP's Tucson Sector apprehended more than 200,000 individuals. (Doc. 4 at 7, citing U.S. Border Patrol's 2013 and 2014 annual reports.) According to Plaintiffs, tens of thousands of individuals apprehended annually are detained in holding cells in multiple Tucson Sector detention facilities. (Id.)

Plaintiffs filed this action in June 2015, raising six claims for relief related to the treatment of Tucson Sector civil immigration detainees. (Doc. 1.) Plaintiffs' first five claims stem from Defendants' alleged violation of the Due Process Clause of the Fifth Amendment based on their subjection of detainees to deprivation of sleep, deprivation of hygienic and sanitary conditions, deprivation of adequate medical screening and care, deprivation of adequate food and water, and deprivation of warmth. (Doc. 1 ¶¶ 184–218.) Plaintiffs' sixth claim stems from Defendants' alleged violation of the Administrative Procedures Act (APA) based on their failure to enforce their own procedures related to the operation of holding cells in Tucson Sector facilities. (Id. ¶¶ 219–24.)

Plaintiffs seek declaratory and injunctive relief, including an Order compelling Defendants to provide Plaintiffs and the proposed class with beds and bedding; access to soap, toothbrushes, toothpaste, and other sanitary supplies; clean drinking water and nutritious meals; constitutionally adequate cell occupancy rates, temperature control, and fire, health, and safety standards; medical, dental, and mental health screening; and emergency medical care. (Id. ¶¶ 230–35.) Plaintiffs also request Court-ordered monitoring as appropriate. (Id. ¶ 236.) The proposed Class definition is "all individuals who are now or in the future will be detained for one or more nights at a CBP facility, including Border Patrol facilities, within the Border Patrol's Tucson Sector." (Doc. 4 at 6). The proposed Class representatives are Plaintiffs Jane Doe # 1 and Jane Doe # 2, who are currently confined in the Tucson Border Patrol Station in Tucson, Arizona (Doc. 1 ¶¶ 15, 35), and Norlan Flores, a 34–year–old Nicaraguan native residing in

---

1. Plaintiffs have requested oral argument. Because the Court will grant Plaintiffs' Motion and will require supplemental briefing as set forth in this Order, the Court does not find oral argument called for at this time.

2. *See* http://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/tucson-sector-arizona (last visited October 30, 2015).

Tucson, who has twice been detained in a holding cell in the Tucson Border Patrol Station. (*Id.* ¶ 52.)

## II. Governing Standard

██ The Court's authority to certify a class action is found in Federal Rule of Civil Procedure 23. Plaintiffs first bear the burden of establishing the four requirements articulated in Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Additionally, Plaintiffs must establish one of the requirements found in Rule 23(b). In this case, Plaintiffs allege that class certification is appropriate pursuant to Rule 23(b)(2), which requires a demonstration that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

██ When analyzing whether class certification is appropriate, the Court must conduct "a rigorous analysis" to ensure that "the prerequisites of Rule 23(a) have been satisfied." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S.Ct. 2541, 2551–52, 180 L.Ed.2d 374 (2011) (citing *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). As discussed below, the Court finds that certification of the Class is appropriate.

## III. Rule 23(a) Analysis

### A. Numerosity

██ Plaintiffs assert that the Border Patrol apprehends and detains tens of thousands of individuals in its Tucson Sector facilities annually. (Doc. 4 at 12.) They point to evidence that in the six-month period from January 1, 2013 to June 1, 2013, more than 70,000 individuals were detained in Tucson Sector facilities, with close to 60,000—or more than 80 percent—being held in detention for 24 hours or more. (*Id.*; Cantor Decl., Doc. 1–6 at 4–5, ¶¶ 6, 10.) Given these volumes, Plaintiffs argue that the number of individuals who meet the proposed class definition is in the many thousands. (Doc. 4 at 12.) Defendants do not dispute that the numerosity requirement is satisfied. Indeed, there is no doubt that joinder of all members of the potential Class would be impracticable, if not impossible. *See Sepulveda v. Wal–Mart Stores, Inc.,* 237 F.R.D. 229, 242 (C.D.Cal.2006) (acknowledging that joinder will be impracticable for very large classes). The Court finds the numerosity requirement satisfied.

### B. Commonality

#### 1. Governing Standard

██ To establish commonality, Plaintiffs must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs need not demonstrate that all questions are common to the class; rather, class claims must "depend upon a common contention ... [that is] capable of classwide resolution." *Dukes,* 131 S.Ct. at 2551. "Even a single [common] question" will suffice to satisfy Rule 23(a). *Id.* at 2556 (citation omitted). In the civil rights context, commonality is satisfied "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir.2001).

██ In assessing commonality, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen'l Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, 102

S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.") (internal citations and quotation marks omitted). That said, although the Court must consider the underlying merits of Plaintiffs' claims to ascertain whether commonality exists, it is not the Court's function at this juncture to "go so far ... as to judge the validity of these claims." *USW v. ConocoPhillips Co.*, 593 F.3d 802, 808–09 (9th Cir.2010) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir.2003)). Thus, Plaintiffs' motion for class certification is not an opportunity to hold "a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir.2012).

## 2. Analysis

 Plaintiffs maintain that all members of the proposed class share a "common core of salient facts" and challenge the same "policies and practices that exist in all Border Patrol Stations" that detain individuals in the Tucson Sector. (Doc. 4 at 14.) As a result, they claim, all putative class members also present common questions of law. (*Id.*) These include whether Defendants' alleged policies and practices result in the deprivation of Plaintiffs' and putative class members' rights to humane treatment in violation of the Fifth Amendment Due Process Clause and the APA, including (1) the right to sleep, (2) the right to hygienic and sanitary conditions, (3) the right to adequate medical care, (4) the right to adequate food and water, and (5) the right to warmth. (*Id.* at 14–15.)

Defendants argue that the Court should reject class certification due to lack of commonality in this case. They first argue that Plaintiffs fail to show commonality as a matter of law because the class certification cases upon which they rely—*Hernandez v. County. of Monterey*, 305 F.R.D. 132 (N.D.Cal.2015); *Gray v. County. of Riverside*, No. EDCV 13–00444–VAP (OPx), 2014 WL 5304915 (C.D.Cal. Sept. 2, 2014); and *Brown v. Plata*, 563 U.S. 493, 131 S.Ct. 1910, 179 L.Ed.2d 969 (2011)—do not apply in this context. (Doc. 41 at 10; see Doc. 4 at 15.) This is because, Defendants argue, these cases deal only with specific conditions of confinement, not the variety of conditions presented by Plaintiffs, and they apply to the treatment of criminal detainees under the Eighth Amendment cruel and unusual punishment standard, not the treatment of civil immigration detainees under the Fifth Amendment due process standard put forth in this action. (Doc. 41 at 9–12.)

This argument is misplaced. As relevant here, the above cases all involve alleged system-wide conditions of confinement. The Complaint in *Hernandez*, like the instant Complaint, challenged a variety of allegedly unconstitutional conditions: in that case, lack of safety, inadequate medical and mental health care, and improper accommodations for disabled inmates. 305 F.R.D. at 141–43. In upholding commonality, the court in *Hernandez* found that claims of "systemic deficiencies ... have long been brought in the form of class action lawsuits" and that apart from such litigation "it is unlikely that ... conditions that violate the Eighth Amendment could ever be corrected by legal action." *Id.* at 157–58. The court in *Gray* similarly certified a class based on alleged system-wide deficiencies in inmate medical and mental health care in five county jails. 2014 WL 5304915, at *2, *33–34. Additionally, the Supreme Court in *Plata* affirmed class-wide relief, including phased-in population reductions, for inmates with serious mental or medical conditions based on the California Prison System's alleged system-wide failures to deliver adequate care for those classes of inmates. 131 S.Ct. at 1926, 1939–47.

Defendants appear to claim that these cases are inapposite because they involve fewer facilities and less varied issues and inmates than are presented here. (Doc. 41 at 10). They argue that "[i]n contrast" to these cases, "Plaintiffs here challenge a number of different conditions they allege were experienced by a variety of individuals during immigration processing over an unspecified period of time at eight different Border Patrol stations throughout the Tucson Sector." (*Id.*) It is not clear, however, how Defendants believe such generalized factual differences make the above cases inapt. Moreover, Defendants fail meaningfully to distinguish the nature of the issues related to the various conditions of confinement in these cases from the inhumane conditions of confinement Plaintiffs allege exist for those held overnight in all Tucson Sector Border Patrol facilities.

Absent substantial differences between the factual and legal nature of these cases and the factual and legal nature of Plaintiffs' claims, Defendants argument that the Court should find a lack of commonality appears to rest merely on their assertion that the body of law upon which Plaintiffs rely pertains to criminal rather than civil detainees and arises under an Eighth Amendment, not a Fifth Amendment, standard. (*Id.*) But such a finding would lead to the absurd result that only criminal detainees, not civil detainees, could ever litigate system-wide conditions of confinement as a class. For purposes of commonality the operative question is not whether the same detention status and same legal standard applies as applies in other analogous class action cases. Rather, the question is whether the putative class members, themselves, present a common contention that "is capable of classwide resolution," meaning "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc.* 131 S.Ct. at 2545.

Here, Plaintiffs contend that all putative class members are subject to the same conditions in which they are denied basic necessities such as bedding, food, water, and adequate health care in violation of the Due Process Clause and the APA. (Doc. 1 ¶¶ 89175, 184–224.) In support, they provide numerous declarations in which putative class members attest to being subjected to frigid temperatures, overcrowding, lack of beds and blankets, constant illumination, and lack of adequate food, water, health care, and sanitary supplies. (Doc. 4 at 7–10; Doc. 2. Exs. 1–6.) Defendants fail to show why Plaintiffs' contentions, if proven, would be incapable of classwide resolution in the immigration detention context. Indeed, to the extent that Defendants appear to argue that commonality cannot be met simply because "no case clearly establishes a legal standard for Fifth Amendment due process challenges in this context" (Doc. 11 at 20), this argument is self-defeating. The question of what standard applies to the treatment of civil immigration detainees is, itself, a question capable of—indeed, suited to—classwide resolution.

Likewise, the question of whether Defendants have violated the applicable legal standard with respect to the treatment of immigration detainees held overnight in Tucson Sector Border Patrol facilities unquestionably lends itself to classwide resolution. Classwide proceedings would determine, for instance, whether an injunction directing Defendants to remedy any alleged unconstitutional conditions, such as the lack of beds and blankets or the lack of health care screening, is an appropriate response. As the Supreme Court has found, commonality is satisfied not merely where classwide proceedings are capable of presenting common questions of fact and law, but where they are capable of "gen-

erat[ing] common *answers* apt to drive the resolution of the litigation." *Dukes,* 131 S.Ct. at 2551(emphasis in original, internal citation and quotation marks omitted). Based on Plaintiffs' common set of allegations supported by the numerous declarations discussed above, Plaintiffs have shown sufficient commonality of claims to meet these purposes.

Defendants also argue that the Court should reject commonality because "Plaintiffs have failed to identify any specific policy or practice to which *all* members of the class were subjected." (Doc. 41 at 13) (emphasis in original.) Defendants maintain that although Plaintiffs use the term "policy and practice," they fail to point to any particular policies that form the basis of their claims, and their assertion of unconstitutional practices "is based on the varying allegations of 53 individuals regarding their different individual experiences ... not on any uniformly applied policy." (*Id.*) This argument also fails for a number of reasons.

First, Plaintiffs need not demonstrate that all class members have been or will be subjected to identical harms. Even if specific injuries among members of the proposed class differ, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong,* 275 F.3d at 868 (internal citations omitted). Plaintiffs maintain that "all individuals detained for one or more nights in Defendants' custody are necessarily subjected to the same conditions because of Defendants' practice of placing detainees in overnight hold rooms that Defendants admit are 'not designed for long-term care and detention.'" (Doc 42 at 12, quoting Padilla Decl. Doc. 39–1 at 4 ¶ 11.) Where system-wide conditions such as those presented here underlie the various alleged harms, "individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Armstrong,* 275 F.3d at 868.

Defendants nonetheless focus on just such individual factual differences. They emphasize, for example, that individual immigration detainees are held for different lengths of time, at different hours, and at different Border Patrol stations in the Tucson Sector. (Doc. 41 at 14–15; *id.* n. 6) In addition, they argue that putative class members are likely to experience different conditions based on variables such as age, immigration history, criminal history, location of apprehension and processing, and the availability of beds at U.S. Immigration and Custom Enforcement (ICE) or Office of Refugee Resettlement (ORR) facilities, where they may otherwise be sent. (Doc. 41 at 14.) Other more generalized factors that Defendants argue can affect conditions include a surge of apprehensions in a given day, the outbreak of a communicable disease, or the presence of criminal aliens at a particular location. (*Id.*) For these reasons, Defendants argue, whether putative class members' due process rights have been or will be violated requires individualized analyses and cannot be determined on a classwide basis. (*Id.* at 14–15.) Defendants point to Padilla's declaration which shows that the time individuals spend in Tucson Border Patrol facilities varies based on available transportation to and available bed space at ICE or other facilities. (Doc. 39–1 at 4 ¶ 11.) The same declaration also shows that individuals may be placed in separate hold rooms based on factors such as gender, age, and family groups, where feasible. (*Id.* ¶ 12.)

These stated variations are, in fact, irrelevant to the commonality determination because Plaintiffs do not seek to assert classwide claims based on the length of individual detentions, the placement or grouping of individual detainees, or other

personalized factors. Instead, their claims are based on alleged Sector-wide conditions of confinement that they claim all overnight detainees are subjected to in all Tucson–Sector Border Patrol locations. (*See, e.g.,* Doc. 1 ¶¶ 1, 79, 81–83, 87–88.) Defendants make no claims that the factors at issue in the Complaint, such as the lack of beds and blankets, food, water, health care, and other basic necessities, vary by facility. Nor do they claim that basic provisions are otherwise meted out differently for different detainees based on the time, place, or reason for their detention or any other individualized considerations. The differences in length of confinement, location, and other incidentals Defendants would have the Court focus on are therefore merely a distraction from the underlying commonality of Plaintiffs' due process and APA claims.

Second, Defendants' argument that commonality does not exist because Plaintiffs have not identified any policies underlying their claims relies on an overly narrow interpretation of the Ninth Circuit's opinion in *Parsons v. Ryan,* 754 F.3d 657 (9th Cir.2014). As Defendants note (Doc. 41 at 12–13.), the Ninth Circuit in *Parsons* affirmed commonality where the district court had identified ten statewide Arizona Department of Corrections (ADC) policies to which all members of the putative class were subject. 754 F.3d at 678. Crucial to the court's finding was that, although the precise injuries of putative class members would necessarily differ, "every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide ADC policy or practice that creates a substantial risk of serious harm." *Id.* The court reasoned that "[w]hat all members of the putative class ... have in common is their alleged exposure, as a result of specified statewide ADC policies and practices that govern the overall conditions of health care services and confinement, to a substantial risk of serious future harm." (*Id.*)

Defendants would have the Court distinguish the instant case from *Parsons,* purportedly because Plaintiffs have not identified any official policies to which all immigration detainees in the proposed class are subject. (Doc. 41 at 12–14.) As already noted, however, Plaintiffs allege and put forth affidavit evidence to support that all members of the proposed class are subject to the same set of overall conditions while detained in Tucson-sector hold cells, including cold temperatures, lack of beds and blankets, and lack of adequate food, water, hygiene supplies and other provisions. Plaintiffs allege, in particular, that Plaintiffs' counsel has interviewed more than 75 individuals who, collectively, were detained in all eight Tucson Sector CBP facilities at various times in 2014 and 2015, and that "the descriptions of the holding cells by the former detainees are consistent with" all of the various inhumane conditions Plaintiffs allege. (Doc. 1 ¶¶ 87–88.) Thus, the same considerations of common exposure to harm created by overall conditions of confinement that led to class certification in *Parsons* are present here.

■ Finally, it is not the case, as Defendants appear to argue, that class certification is only appropriate where Plaintiffs can identify specific stated policies that violate the rights of putative class members. A policy, practice, or custom may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant officials are not reprimanded. *Menotti v. City of Seattle,* 409 F.3d 1113, 1147 (9th Cir.2005) (citing *Nadell v. Las Vegas Metro. Police Dep't.,* 268 F.3d 924, 929 (9th Cir.2001)).

In *Parsons,* the plaintiff class claimed in part that "*despite* ADC stated policies, the actual provision of health care in its prison complexes suffers from systemic deficiencies that rise to the level of [a constitution-

al violation]." 289 F.R.D. 513, 521 (D.Ariz. 2013) *aff'd,* 754 F.3d 657 (9th Cir.2014). Similarly, in this case, Plaintiffs claim that a number of actual, systemic deficiencies in all Tucson–Sector Border Patrol facilities violate the rights of all putative class members. Moreover, Plaintiffs have provided sufficient affidavit evidence from putative class members to plausibly support each of the asserted deficiencies. As already discussed, claims involving overall conditions that affect the rights of all putative class members are sufficient to satisfy commonality. Whether such conditions result from Defendants' stated policies or from their alleged failure to create or adhere to those policies does not change the commonality analysis. The Court finds the commonality requirement satisfied.

### C. Typicality

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Wal–Mart,* 131 S.Ct. at 2551 n. 5 (quoting *Falcon,* 457 U.S. at 158–59, 102 S.Ct. 2364). In *Armstrong,* the Ninth Circuit explained that "named plaintiffs' injuries [need not] be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs, and that the injuries result from the same, injurious course of conduct." *Armstrong,* 275 F.3d at 869.

 Defendants argue that Plaintiff Flores, in particular, should be dismissed because he was not confined at a CBP facility at the time Plaintiffs filed the Complaint on June 8, 2015, and he therefore lacks standing to sue. (Doc. 41 at 16 n. 7.) Defendants maintain that although Flores claims to fear being detained by Border Patrol in the future, he has not shown that any such future detention is "reasonably likely to occur." (*Id.*)

This argument is unfounded because the proposed class definition includes all individuals "who are now *or in the future* will be detained for one or more nights at a CBP facility … within the Border Patrol's Tucson Sector" (Doc. 4 at 6), and the allegations in the Complaint support that Flores was previously and may again be so detained. The Complaint alleges that Flores was taken to a Tucson Sector Border Patrol Station after a minor traffic violation on August 10, 2014, and was held for approximately 36 hours. (Doc. 1 at 12 ¶¶ 56.) While in custody, Flores allegedly presented documentation that he was represented by immigration counsel, but he was denied contact with his attorney. (*Id.* at 13 ¶ 63.) The Complaint further alleges that, due to a backlog in issuing Visas, Flores has not yet received his U Nonimmigrant Visa, and he believes he could be detained by Border Patrol again. (*Id.* at 14 ¶ 64.) For purposes of standing, Flores's previous 36 hour detention without contact with counsel after a minor traffic violation, coupled with his indeterminate wait for his approved Visa is sufficient to show an "actual or imminent invasion of a legally protected interest." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *c.f. Pickern v. Holiday Quality Foods Inc.,* 293 F.3d 1133, 1138 (9th Cir.2002) ("[A] plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.' ").

 Defendants additionally argue, as to all named Plaintiffs, that the same factual variations already set forth to show a lack of commonality defeat typicality. (Doc. 41 at 15.) This argument also lacks merit. As already discussed, Defendants have not shown that variations in such factors as length of stay or facility location have any discernable bearing on the overall conditions that Plaintiffs assert affect

all overnight detainees in Tucson–Sector Border Patrol facilities.

Defendants also argue against typicality because they contend that some putative class members may never experience the specific deprivations Plaintiffs allege, but will, instead, receive food, water, showers, and mattresses under the Border Patrol policies described in Padilla's declaration. (*See id.* at 16; Doc. 39–1 at 6 ¶¶ 15–16.) This argument goes to the merits of Plaintiffs' claims, however, and does not establish the existence of any individually-based distinctions between the alleged treatment of named Plaintiffs in Tucson–Sector Border Patrol hold cells and the overall conditions of confinement that Plaintiffs allege impact all overnight detainees.

Defendants posit further possible distinctions between class members that they argue undercut typicality, noting, for instance, that a criminal detainee may be held shackled and locked in isolation while an unaccompanied minor would be placed with others in a hold cell with an open door. (Doc. 41 at 16.) These purported distinctions are also just a distraction, however, from Plaintiffs' contentions of specific constitutionally-deficient conditions of confinement that apply to all overnight detainees, and they do not speak to whether the experiences of the named Plaintiffs typify those of the proposed class. Here, the named Plaintiffs are either currently housed in or have been housed for at least one night in Tucson–Sector Border Patrol facilities and face the threat of repeated detention. The named Plaintiffs have therefore experienced the same overall conditions of confinement that Plaintiffs have plausibly alleged are common to all Tucson–Sector Border Patrol facilities. The Court finds the typicality requirement satisfied.

## D. Adequacy of Representation

 Finally, Rule 23(a)(4) requires that class representatives fairly and adequately represent the interests of the entire class. "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Dukes v. Wal–Mart Stores, Inc,* 603 F.3d 571, 614 (9th Cir.2010) *rev'd on other grounds by* 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374. For the reasons set forth below, the Court finds the adequacy of representation requirement is also satisfied.

### 1. Named Representatives

Defendants specifically challenge the adequacy of Flores's representation because, they argue, Flores's desire to maintain his U Nonimmigrant Visa status (*see* Doc. 1 at 11 ¶ 54) could place his own interests in conflict with those of the class. (Doc. 41 at 17). Defendants do not explain how seeking to maintain a lawful presence in the United States would put Flores's interests at odds with those of the class or would otherwise interfere with his ability to represent the interests of the class in this action. As already noted, Plaintiffs allege that Flores was previously detained in CBP custody where he experienced the same systemic conditions alleged throughout the Complaint, he is still awaiting his actual Visa, and he continues to fear possible detention under the same set of conditions. The Court does not find Flores's approval for a U Nonimmigrant Visa a sufficient reason to disqualify him as a class representative at this time. Even if Flores's claims for relief later become moot by the issuance of his awaited Visa, this would not affect class certification because where, as here, an individual's claims are inherently transitory, "the 'relation

back' doctrine is properly invoked to preserve the merits of the case for judicial resolution." *County of Riverside v. McLaughlin,* 500 U.S. 44, 52, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) (internal citations omitted).

■ Defendants also argue that all named Plaintiffs are inadequate to serve as class representatives because some putative class members allege unaddressed or mishandled medical issues, and none of the named Plaintiffs profess medical ailments for which they were denied proper care. *(Id.* at 17.) Defendants further argue that the Complaint alleges that Defendants' policies and practices have caused "irreparable, ongoing physical and psychological harm" and that named Plaintiffs have not alleged that they have personally suffered such harms, making them additionally unsuitable to represent the interests of the proposed class. *(Id.)*

■ As already discussed, Plaintiffs need not demonstrate that all class members have been subjected to identical harms. Neither is it necessary for each named representative to have suffered the full spectrum of harms represented by the class as a whole. *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir.2003) (recognizing that, " '[u]nder Rule 23(a)'s permissive standards,' " plaintiffs are not required to offer a class representative for each type of discrimination claim alleged (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998))). Moreover, as to medical care, in particular, the Ninth Circuit found in Parsons that systemic deficiencies affect even those who have not or will not experience specific medical needs. 754 F.3d at 679 (9th Cir.2014) (citing *Plata,* 131 S.Ct. at 1940) (Noting that, "[a]s Justice Kennedy explained in *Plata,* inadequate health care in a prison system endangers every inmate."). Here, too, Plaintiffs allege an overall lack of medical care and screening. (See, e.g., Doc. 1 at ¶¶ 1,

27–30, 127–135.) In addition, they allege that Flores was housed with other detainees who were vomiting or suffering from diarrhea but did not receive any medical attention. (Doc. 1 at 13 ¶ 62.) Under such circumstances, the Court does not find that a lack of individual medical ailments while in CBP custody makes the named Plaintiffs unsuitable to represent the asserted due process right to medical care of the class.

It is also not the case, as Defendants argue, that the named Plaintiffs have failed to allege some form of harm. Plaintiffs allege in the Complaint that "[t]he inhumane and dangerous conditions in the Tucson Sector facilities result in irreparable, ongoing physical and psychological harm to Plaintiffs and putative class members and serious risk of future harm." (Doc. 1 at 5 ¶ 10.) Defendants appear to argue that this allegation does not apply to named Plaintiffs because they have not alleged specific physical and psychological injuries. A partial sampling of allegations shows, however, that each of the named Plaintiffs allegedly endured cold temperatures with minimal clothing, lack of beds or bedding, loss of sleep, lack of proper hygienic supplies, lack of medical screening, constant illumination, and little food or water while in CBP custody. *(See* Doc. 1 ¶¶ 2129, 40–49, 53, 56–62.) These allegations are sufficient to show that the named Plaintiffs suffered harms typical of the class and that their interests in challenging CBP's conditions of confinement align with the interests of the class as a whole. Adequacy of representation is satisfied as to the class representatives.

### 2. Plaintiffs' Counsel

Plaintiffs are represented by the ACLU Foundation of Arizona, the American Immigration Council, the National Immigration Law Center, the Lawyers' Committee for Civil Rights of the San Francisco Bay

Area, and Morrison & Forester LLP. Collectively, counsel has successfully litigated a number of class action cases regarding the rights of immigrants and conditions of confinement. (Doc. 4 at 19; *see* Docs. 1–1, –2, –3, –4, –5.) Defendants do not challenge the adequacy of representation in this case. (Doc. 41 at 17 n. 8.) The Court finds that Plaintiffs are represented by qualified and competent counsel. Adequacy of representation is satisfied.

## IV. Rule 23(b)(2)

▮ Plaintiffs are also charged with satisfying one of the requirements in Rule 23(b), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In this case, Plaintiffs allege that Rule 23(b)(2) is met because they allege unconstitutional conditions of confinement stemming from systemic policies and practices. (Doc. 4 at 20.)

Defendants again argue that "Plaintiffs do not challenge a single policy applying to all facilities, but rather various practices amongst the facilities." (Doc. 41 at 18.) As already discussed, this argument ignores the systemic nature of the conditions alleged in Plaintiffs' Complaint. As noted, Plaintiffs allege and provide declaration evidence to support that each of the due process and APA violations they assert commonly occur at *all* Tucson–Sector CBP facilities. It matters little to this analysis whether such conditions result from identified policies or from the absence or violation of such policies or even whether every putative class member experiences every alleged harm. For purposes of Rule 23(b)(2), what matters is that a pattern of alleged violations can be remedied for all putative class members by the same form of injunctive relief. As the Ninth Circuit explained in *Walters v. Reno* :

▮ [a]lthough common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2). It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.

145 F.3d 1032, 1047 (9th Cir.1998) (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1775 (2d ed. 1986)).

Plaintiffs' claims for injunctive relief stemming from allegedly unconstitutional conditions of confinement are the quintessential type of claims that Rule 23(b)(2) was meant to address. As discussed above, the claims of systemic deficiencies in CBP's detention facilities apply to all putative class members. Further, while the Court is cognizant that any proposed injunction must also meet Rule 65(d)'s specificity requirement, the Court does not find that Plaintiffs have crafted their requests for injunctive relief "at a stratospheric level of abstraction." *Shook v. Bd. of County Comm'rs*, 543 F.3d 597, 604 (10th Cir.2008). Instead, Plaintiffs specifically request injunctive relief for alleged unconstitutional conditions, acts, or omissions that affect all individuals who are detained for at least one night in CBP Tucson Sector facilities. (Doc. 1 at 53–54 ¶ 228.) They seek, as a minimum, the provision of basic necessities, such as beds and bedding; access to soap, toothpaste, and other hygienic and sanitary supplies; clean drinking water and healthy food; medical screening and emergency medical care; and uniform enforcement of health and safety standards. (*Id.* at 54 ¶¶ 229–335.) Thus, the remedies Plaintiffs seek would not lie in providing specific care or provisions to specific inmates as Defendants appear to assert. Rather, the condi-

tions of confinement would be raised for all inmates, and, if successful, a proposed injunction would prescribe "a standard of conduct applicable to all class members." *Shook*, 543 F.3d at 605.

Plaintiff's outline of injunctive relief in their Complaint is sufficient at this stage to meet Rule 23(b)(2)'s requirements.

## V. Class Definition

Defendants argue that the proposed class definition does not meet the standard that "[a] class definition should be 'precise, objective, and presently ascertainable.'" *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D.Cal.1988) (quoting Manual for Complex Litigation, Third § 30.14, at 217 (1995)). (Doc. 41 at 4). Specifically, they argue that Plaintiffs' proposed class definition is unclear as to (1) what facilities are included, (2) what is meant by "detained," and (3) what is meant by spending a "night" in one of the included facilities. (*Id.* at 4–8.). The Court will address each of these objections in turn.

### A. Applicable Facilities

Defendants maintain that it is unclear what facilities are included in the phrase "a CBP facility, including Border Patrol facilities, within the Border Patrol's Tucson Sector." (*Id.* at 5.) They note that, in addition to the eight Border Patrol stations in the Border Patrol's Tucson Sector, CBP has ports of entry (POEs) along the Arizona/Mexico border that are operated by a different office of CBP from Border Patrol, and the POEs are not within the Border Patrol's Tucson Sector. These facts make clear, and Plaintiffs agree (*see* Doc. 42 at 8, 8 n. 1), that POEs are necessarily excluded from the proposed class definition because they are not part of the Border Patrol's Tucson Sector. Defendants argue nonetheless that the phrase "a CBP facility, including Border Patrol facilities, within the Border Patrol's Tucson

Sector" suggests that Plaintiffs intend to include more than just the eight Border Patrol stations in the Tucson Sector, and it is unclear what other facilities, if not POEs, the proposed definition would encompass. (Doc. 41 at 5.)

The Court agrees that this phrase is problematic. As Defendants argue, the clause "including Border Patrol facilities" raises questions about what facilities the class definition is intended to encompass besides the eight Border Patrol stations thereby indicated. Besides adding potential confusion, this clause is unnecessary. Because CBP is the Border Patrol's parent agency, the term "a CBP facility" necessarily includes any and all Border Patrol facilities in the Border Patrol's Tucson Sector, and there is no need to restate this. For these reasons, the Court will modify the proposed class definition to eliminate the clause "including Border Patrol facilities." Absent this clause, the class definition still pertains to the eight Border Patrol stations within the Border Patrol's Tucson Sector that form the locus of Plaintiffs' Complaint. (*See* Doc. 1 ¶ 87) (The more than 75 individuals interviewed by Plaintiffs' counsel had collectively been confined in all eight Tucson Sector Border Patrol stations). The modified definition also still allows the pending class action to apply uniformly—particularly with respect to Plaintiffs' prayers for system-wide injunctive relief—in the event CBP or the Border Patrol utilizes any additional CBP facilities besides the existing eight Border Patrol Stations to detain individuals in the Border Patrol's Tucson Sector.

### B. The Meaning of "Detained"

Defendants argue that the proposed class definition lacks precision about what it means for an individual to be "detained" in the context of Border Patrol operations. (Doc. 41 at 6.) Defendants acknowledge

that individuals apprehended by Border Patrol are "in custody" from the time they are apprehended in the field and brought to a Border Patrol station for processing until they are released, removed, or transferred. (Doc. 41 at 6.) Defendants maintain, however, that Border Patrol custody is unique and variable because some individuals may receive medical treatment or meet with consular officials during this time, the length of custody varies based on factors determined during processing but is intended to be brief, and "Border Patrol stations are not designed for long-term care and detention as that term is ordinarily understood." (*Id.*) For these reasons, Defendants argue, "detention" is not appropriate to describe the short-term period of custody that occurs at Border Patrol stations. (*Id.*)

Defendants once again rely on distinctions that confuse the real issue. Even if, as they assert, Border Patrol custody is impacted by a number of variables and is relatively short term, this does not mean that it is not custody just the same. Nor does it mean that those "in custody" for at least the one-night minimum period the class definition covers are not "detained." Plaintiffs assert that the common meaning of the word "detain" is "to hold or keep in or as if in custody." (Doc. 42 at 8, quoting *Mirian Webster Dictionary*, http://www. merriam-webster.com/dictionary/detain.) They further quote from CBP's own guidelines which refer to "the short term *custody* of persons ... *detained* in hold rooms in Border Patrol stations.'" (Doc. 42 at 8, quoting U.S. Border Patrol Policy Memorandum, "Hold Rooms and Short Term Custody," Doc. 26–1 at 5) (emphasis added.) Thus, CBP, itself, recognizes custody as detention, at least where such custody involves placement in hold rooms, which is a unifying factor in the allegations throughout the Complaint.

The Court concludes, for purposes of this action, that the word "detained" equates to an individual being in Border Patrol custody and thereby lacking the freedom to leave. This is in keeping with the ordinary definition of the word "detained," and, when looked at in conjunction with the other parameters of the proposed class definition, is precise enough to ascertain whether an individual is a member of the proposed class.

## C. Meaning of "For One or More Nights"

Defendants argue that the phrase "for one or more nights" lacks clarity in the context of Border Patrol operations because individuals are brought in and out of Border Patrol facilities at all hours. (Doc. 41 at 7.) They posit a number of scenarios in which different types of individuals who are apprehended and processed at different times of the day or night have very different experiences. These individuals may include an unaccompanied minor picked up at 7:00 p.m., then transferred to the Tucson Coordination Center at 9:00 p.m., and then transferred to ORR custody at 11:30 p.m.; a criminal alien picked up with drugs in his possession at 1:00 a.m., then held in isolation at the Nogales Station, and then transferred to Tucson for prosecution at 5:00 a.m.; or a pregnant woman picked up at 11:00 p.m., then taken to the Casa Grande Station, and then transferred to a local medical care center at 2:00 a.m. (*Id.*) Defendants argue that whether any of these individuals would come under Plaintiffs' proposed class definition is unclear because Plaintiffs do not provide clarity about what constitutes the beginning or end of the "night." (*Id.* at 6–7.)

Plaintiffs respond that this part of the proposed class definition is not ambiguous because other courts have certified classes

based on "overnight" detention. (Doc. 42 at 9, citing cases.) They also argue that "'overnight,' is commonly understood to mean 'during the night,' or 'of, lasting, or staying the night.'" (Id. quoting *Mirian Webster Dictionary*, http://www.merriam-webster.com/dictionary/overnight.) Plaintiffs maintain that it is clear that Defendants' scenarios would not satisfy this definition because each of those examples "pertains to detention lasting for only a portion of the night." (Doc. 42 at 9.)

The Court agrees with Plaintiffs that being detained for "one or more nights" is commonly understood to involve a stay of at least one night. Nonetheless, the Court agrees with Defendants that such an understanding is not sufficient here, where individuals are brought in and out of detention at all hours, and where there is no additional common understanding of when, exactly, a night begins and ends. Even if, as Plaintiffs assert, Defendants' proposed scenarios are too short to constitute more than just a "portion of the night," it is not clear how many hours would tip the scales into an "overnight" stay or just what would satisfy the intent of Plaintiff's proposed class definition.

The cases upon which Plaintiffs rely to show that "overnight," as it is commonly understood, is adequate are inapposite because in *Brown v. City of Detroit,* the district court certified a class consisting of those detained by the Detroit Police Department "overnight or for more than sixteen hours in a 24–hour period." No. 10–12162, 2012 WL 4470433, at *19 (E.D.Mich. Sept. 27, 2012). Thus, the class definition in *Brown* included parameters beyond the common understanding of "overnight" that would resolve when even a daytime or partial-night detention would qualify. Similarly, in *Dunn v. City of Chicago,* the class was defined in relevant part as "[a]ll persons held in a[n] . . . interrogation or interview room for more than six-

teen hours in a 24–hour period." 231 F.R.D. 367, 370 (N.D.Ill.2005) *amended on reconsideration,* No. 04 C 6804, 2005 WL 3299391 (N.D.Ill. Nov. 30, 2005). Plaintiffs proposed class definition lacks this added clarity. This deficiency is particularly important, where, as here, the temporal parameters of confinement are inherently tied to the relief sought on behalf of the class, such as the provision of beds, bedding, and various hygiene supplies. For this reason, the Court cannot *sua sponte* modify the proposed class definition without inserting itself into the role of Plaintiffs in framing the precise circumstances they believe call for such relief.

Despite this issue, the Court does not find that a more precise definition of what it means to be detained "for one or more nights" is required before it can certify the proposed class as defined in this Order, provided Plaintiffs file an amended class definition more exactly defining "for one or more nights."

The Court will therefore certify the class as set forth below, but will require Plaintiffs to file an amended definition better describing "one or more nights," and the Court will thereafter finalize the class definition, unless the Defendants object to the amended class definition.

**Accordingly,**

**IT ORDERED:**

(1) Plaintiffs' Motion for Class Certification (Doc. 4) is **granted.**

(2) The following Class is **certified** under Rule 23(b)(2):

All individuals who are now or in the future will be detained for one or more nights at a CBP facility within the Border Patrol's Tucson Sector.

(3) The Class is certified as to Defendants' alleged violations under the Fifth Amendment Due Process Clause and the APA of the following asserted rights:

(a) The right to sleep,

(b) The right to hygienic and sanitary conditions,

(c) The right to adequate medical care,

(d) The right to adequate food and water, and

(e) The right to warmth.

(4) Named Plaintiffs Jane Doe # 1, Jane Doe # 2, and Norlan Flores are appointed as Class representatives.

(5) Within 5 days of the filing date of this Order, the Plaintiffs must file an amended class definition more exactly describing what "one or more nights" means in the context the operative class definition.

(6) Defendants will have **ten days** from the filing date of the Plaintiffs' amended class definition to object to the "one or more nights" amendment.

(7) The Court shall rule on any objections and approve the amended class definition as submitted by Plaintiffs or as modified by the Court if necessary to resolve any objection from the Defendants.